RECEIVED IN CLERK'S OFFICE
U.S.D.C. Atlanta

APR 17 2014

JAMES N. HATTEN, Clerk
By: Deputy Clerk

# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA

**NICHOLAS J. BURROUGHS**
**Plaintiff**

**v**

**BANK OF AMERICA, N.A.**

**BANK OF NEWYORK MELLON (TRUSTEE FOR CWALT,INC. 2005-33CB)AKA COUNTRYWIDE FKA**

**AMERICAN MORTGAGE NETWORK, a Delaware Corporation**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS**

**AKA "MERS"**

**Invitation Homes aka Blackstone Group aka Riverstone Residential aka**

**IH3 Property Georgia, LP**

**Defendants**

**CIVIL ACTION**
1:14-CV-1129
**JURY TRIAL DEMANDED**

---

## VERIFIED COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF AND DAMAGES

---

COMES NOW, Plaintiff, NICHOLAS BURROUGHS, proceeding ***Prose***, who files his ***Verified Complaint for Declaratory Relief, Injunctive Relief, and Damages***.

## INTRODUCTION

1. In this action, Plaintiff seeks *inter alia*, an injunction of any dispossessory action on his property based upon the above Defendant's failure to comply with statutory prerequisites to foreclosure, and a determination of the validity of a foreclosure sale held in violation of statutory requirements, together with damages and other relief.

2. Georgia has longstanding, statutorily prescribed non-judicial procedures by Power of Sale with minimal consumer protections for homeowners. 12 USC 3752(1).

3. The law is clear, however, that entities foreclosing upon homeowners must strictly comply with Georgia's statutory prerequisites to foreclosure.

Among other things, it is black-letter law that the entity seeking to foreclose must have actual legal authority to exercise the Power of Sale.

4. Many foreclosing entities, including Defendants, have dispensed with this fundamental requirement. Such entities foreclose through their Counsel, without having first obtained proper and legally valid assignment of the mortgage and the power of sale, such as in this case.

5. Georgia's foreclosure process has become undisciplined, and lawless. As in this example of Plaintiff clearly informing to all Bona Fide Purchasers (BFPs) of defects present in title while having exercised an unchallenged stoppage of all bidding on his property listed as 1531 Boulder Walk Drive SE, Atlanta, GA 30316 at the Dekalb County Court steps on January 7, 2014. Having silenced all bidders before the auctioneer could accept an offer on the initial bid of $125,000.00, Plaintiff presented to

the head auctioneer with Auction.com a copy of the Chapter 13 Bankruptcy (No. 14-50559-WLH) and Revocation of Power of Attorney dated August 29, 2013 2:28:06PM Deed Book 23991 Pg. 604 to auction sale at the Dekalb County Court House steps to stop the fraudulent process. Plaintiff references the following information to the Court **[MPP Invs., Inc. v. Cherokee Bank, N.A., 707 S.E.2d 485, 490 (Ga. 2011) finding the purchaser had actual and constructive notice of challenges to title; also ruling that failure to send notice of right to cure pursuant to the power of sale renders the foreclosure proceeding "invalid"].** In addition to silencing the auction, Plaintiff rightfully sited Judge Robert Grossman's proclamation that "...even in non-judicial states, foreclosure using MERS (as an instrument) is theft." Many foreclosures are plainly void under statute and Georgia case law, many borrowers never obtain accurate statutorily required notices, have flawed and fraudulently created assignments of title and thus are sold, and sometimes, resold without a proper chain of title, and foreclosed on homes whose mortgages have been satisfied, or eliminated/discharged by The United States Bankruptcy Court. {See Affidavit Exhibit "H"}

6. Plaintiff seeks relief for the Defendant's actions with initiating a wrongful foreclosure of his residence. Plaintiff seeks declaratory and injunctive relief concerning a foreclosure conducted by entities who did/do not have standing to pursue and perform such foreclosures, declaratory and injunctive relief concerning the latest notice of sale under power letter Plaintiff has received, and an injunction of future eviction/dispossessory actions that defendants may pursue against Plaintiff, and procedures to void/verify the validity of the underlying sale.

7. Plaintiff further seeks injunctive relief to prevent defendants from inflicting their harmful behavior upon Georgia homeowners.

## JURISDICTION AND VENUE

8. This court has subject matter jurisdiction over this action because the matter involves Georgia real property and foreclosure Rules and statutes.

9. Venue is proper in DEKALB County; It is the locale for the Registered Agents, and/or the principal place of business for Defendants is presented in the below listed entities outlined in items 11 through 14.

## THE PARTIES

10. Plaintiff, NICHOLAS BURROUGHS, and proceeding ***in propria persona*** resides at 1531 Boulder Walk Drive SE Atlanta, Georgia 30316-3987, Mr. Burroughs is a real party of interest in this civil proceeding with interest in the property. The Plaintiff has first-hand knowledge of the facts and prepared to testify to the best of his knowledge, giving truthful testimony here and in the attached Affidavit.

11. All Persons referenced in Department of The Treasury November 24, 1997 Memorandum For Deputy Secretary Summers from Timothy F. Geithner Assistant Secretary (International Affairs) SUBJECT: WTO Financial Services Negotiations: Industry Consultations, wherein Mr. Geithner informs Deputy Secretary Summers "I suggest that you contact, via phone call, to the following firms individually:

Banking

Bank of America: David Coulter, (212) 622-2255

Citibank: John Reed, (212) 559-2732

Chase Manhattan: Walter Shipley, (212) 270-1380

Securities

Goldman Sachs: John Corizine, (212) 902-8281

Merrill Lynch: David Kamanski, (212) 449-6868

"These and other firms participate in the so-called "Financial Leaders Group" (FLG, composed of key members of U.S. and European industry with a stake in the WTO talks. The FLG proposed a list of barriers to be addressed in the negotiations, and have sent representatives to several of the negotiating sessions in Geneva. I have contacted these firms' representatives at the working level (e.g., Tom Dawson at Merrill) to advise them of your pending phone call."
{T. GEITHNER TO L. SUMMERS IN SAID "END GAME MEMO"}
{See Attached Exhibit}

---

Citing this as a pivotal point in this country's history, Plaintiff submits this document as evidence that high ranking government officials and bank CEOs planned a massive deregulation of nearly all World Wide Banking Systems (WWBS) to completely remove all the rules that governed as a result of The Great Depression and the implementation of the Glass Steagall Act of 1932. By effectively eliminating provisions separating commercial and investment banking, an age of "Too Big to Fail" began, permeating the world wide financial systems and creating an environment where systemically fraudulent financial institutions can do business in a deceptive and ruthless fashion. The years following this 1997 memo brought such massive financial destruction to world wide markets that an unprescedented government backed bail out was required to stop irreversible damage to the financial markets, and to prevent the largest banks in this country from shuddering their doors for business, or closing forever (as in the case of Lehman Brothers). Plaintiff gives reference to the continued financial instability that exists with Quantitative Easing Programs that The Federal Reserve has implemented to correct the massive financial ruin caused by the very systemically fraudulent financial institutions that continue their improper business transactions to this very day. Quantitative Easing III

has thus far pumped over $1.5Trillion into financial markets, only to have minimal success in the face of the fraud that continues. There is a factually based theory that the monetary policies of The Federal Reserve continue to encourage an environment where risky investors keep gaming the markets with easy money, precipitating volatile "bubble economy" conditions that reach far beyond mortgage backed securities, credit default swaps, hedge funds, and derivatives, extending now into the risky market of real estate speculation with investors like Blackstone Group, LP pumping $8 Billion+ into the system to securitize rental income in the fashion of mortgage backed securities.

12. Defendant Bank of America Home Loans Servicing, LP (hereinafter "Bank of America, N.A."), is a Foreign For-Profit Corporation, whose principal office address is 100 N Tryon St #170, Charlotte, NC 28202. Bank of America is mentioned two times in The Summers/Geithner November 1997 Memo. David Coulter and their eventual government backed purchase of Merrill Lynch. Merrill Lynch is referenced two times: 1.) Securities Merrill Lynch: David Kamanski 2.) "(e.g., Tom Dawson at Merrill) to advise them of your pending phone call." Geithner statement directing Deputy Secretary Summers "I have contacted these firm's representatives at the working level…" Bank of America and Countrywide have both been named in the document submitted for line item 13.

13. Defendant Bank of New York Mellon One Wall Street, New York, New York 10286. Plaintiff submits the following evidence and documentation pertaining to the following: Bank of New York Mellon (Trustee for CWALT, INC., Pass Through Certificates 2005-33CB), as Trustee or indenture trustee under the Pooling and Servicing Agreements and Indentures and related Sales and Servicing Agreements (collectively, the 'Governing Agreements') governing the Trusts. Bank of New York Mellon is referenced in "Notice is Hereby Given to The Holders of Certificates or

Notes ('Certificateholders') Under the 530 Countrywide Mortgage-Securitization Trusts listed in Exhibit A ('Trusts') and Other Persons potentially interested in the Trusts ("Other Persons" would be, by way of constructive argument, all persons with mortgages directly tied to any of the listed Trusts in The Settlement. Plaintiff gives personal effect to this claim by referencing the Trust as 2005-33CB as listed in attached documentation.) This Notice contains important information for Certificateholders and Other Persons potentially interested in the Trusts. Plaintiff's note was handled by CWALT, INC., a subsidiary of Countrywide that securitized the note to 1531 Boulder Walk Drive SE, Atlanta, GA 30316 into a Trust now held by Bank of New York Mellon, named largest fund of Hedge Fun Administrator January 29, 2013. The settlement has been reached between the Trustee, on the one hand, and Countrywide Home Loans, Inc., aka CWALT, INC., Bank of America Corporation ("BAC"), and BAC Home Loans Servicing, LP, et al. The Settlement requires Bank of American and/or Countrywide to pay a total of US$8,500,000,000.00 (US$8.5Billion) into the Trusts (the 'Settlement Payment'). It also requires Bank of America to implement, among other things, a series of loan servicing procedures and improvements. In the matter of the application of The Bank of New York Mellon (Index No. 651786/2011), in the Supreme Court of the State of New York, County of New York (the 'Court') seeking a judgment, among other things, approving the Settlement and ordering that the Settlement is binding on all Certificateholders. Plaintiff emphatically brings attention to page 2 of 5 in attachment referencing Exhibit A, wherein CWALT 2005-33CB appears 6th row up from the bottom of page 3 of 5. This is clear evidence that the documentation in said trust is defective and no persons in said Trust are bound to a defective instrument. {See Attached Exhibit}

14. Rubin Lublin, LLC is a law firm incorporated in the state of Georgia, their located at their principal place of business, 3740 Davinci Court, Suite 150 Peachtree Corners, Georgia 30092 a/k/a "foreclosure mill attorneys", regularly

represent MERS and/or other entities seeking to perform non-judicial foreclosures in the state of Georgia; in the instant action, acting for and on behalf of it's client Bank of America, N.A., instituted and pursued non-judicial foreclosure against Plaintiff with full knowledge that it lacked authority to do so. In addition, D'Kelly & Sorohan is a law firm incorporated in the State of Georgia located at 2170 Satellite Blvd, Suie 375, Duluth Georgia 30097, and is acting on behalf of Invitation Homes, a subsidiary of Blackstone Group, LP aka Riverstone Residential located at 950 North Point Parkway, Suite 350, Alpharetta, GA 30005. These law firms continue to represent systemically fraudulent financial institutions and knowingly handle forged or incomplete documentation that comes from the above listed financial institutions. To support this, Plaintiff references *Robo-Signing, Chain of Title, Loss Mitigation, and Other Issues in Mortgage Servicing: hearing Before the Subcommittee on Housing and Comty. Opportunity of the H. Fin. Servs. Comm.,* 111th Cong. 105, at 18 (2010) (statement of Adam J. Levitin, Associate Professor of Law, Georgetown University Law Center), http://financialservices.house.gov/Media/file/hearings/111/Levintin111810.pdf

> Legal scholars provide additional evidence of the slipshod handling of the notes and mortgages. For example, Professor Levitin examined a small sample of foreclosure complaints filed in Allegheny County, Pennsylvania, in May 2010 and found that the loan note was not filed with the complaint in over 60% of the cases. His study found that "failure to attach the note appears to be routine practice for some of the foreclosure mill law firms, including two that handle all of Bank of America's foreclosures." {See Attached Exhibit}

15. Defendants Mortgage Electronic Registration Systems, Inc., (hereinafter "MERS"), is a wholly owned subsidiary of MERSCORP, Incorporated in Delaware, operating an electronic registry designed to track servicing rights and ownership of mortgage loans. Their principal place of business is 1818 Library St., Suite 300 Reston, VA 20190. Rife with loop holes and questionable business practices, MERS

was formed ahead of the Mortgage Crisis to facilitate, in efficient fashion, the fraud being committed by all financial institutions doing business with, employing as Assignee or any part thereof, and generating a hazardous paper trail of assignments dated years after closing, questionable documentation with Pooling and Servicing Agreements (PSA) of all states, and an all-around general disregard for the law as it stands, or lobbying the interpretation to a perspective that best suits their agenda. Judge Robert Grossman has plainly stated: "foreclosure employing MERS as an instrument, even in non-judicial states, is theft."

16. Defendants' wrongful acts, as herein below alleged in greater detail, took place within and throughout the State of Georgia.

17. The Defendants and each of them, were the agents, employees, representatives, partners, officers, principals and/or joint venturers of each of the remaining defendants, and in doing the things hereinafter alleged, were acting within the scope, course and purpose of such agency, employment or position, or within the apparent scope, course and purpose of such agency, employment or position and with permission and consent of each of the remaining Defendants.

## FACTS

18. On or about March 31, 2005, Plaintiff executed a Note and Security Deed with borrower as Grantor under the security instrument as (MERS) Mortgage Electronic Registration Systems, Inc. AKA "MERS" with MERS as the Grantee under the security instrument. {See Affidavit Exhibit "A"}

19. On or about March 31, 2005, the Plaintiff unknowing signed his rights allowing the bank to act as the Attorney In Fact on the subject property. During the closing, the Plaintiff contends that he was not advised of his right to the three day right of rescission pursuant to 15 USC Section 1635. Moreover, Plaintiff contends that he was not provided the proper documentation to exercise his right to rescind.

20. Bank of America, N.A. also failed to provide an equitable and timely resolve to a Home Loan Modification for Plaintiff, acting in bad faith as an institution commonly known for its systemic fraud and business practices severely lacking with respect to the banking profession. Bank of America lost all documentation for Plaintiff's attempt to qualify for Making Home Affordable or other government loan modification programs. Bank of America engaged in harmful and deceptive business practices, causing Plaintiff to file for Bankruptcy on several occasion to stop the fraudulent foreclosure sale of the property rightfully occupied by Plaintiff at 1531 Boulder Walk Drive SE, Atlanta, GA 30316; whereby, extreme financial damages have been inflicted on Plaintiff through the only known process afforded to Plaintiff to stop said wrongful foreclosure of property. {See Affidavit Exhibits "C" through "I"}

21. Prior to the assignment to Bank of America, N.A. from Countrywide, Plaintiff gives reference to the bad faith loan servicing practices of Countrywide Home Loans, including losing payments, threatening phone calls, unplanned and unscheduled home inspections to confirm residency, thereby causing extreme emotional distress to Plaintiff. Regarding the lost payment matter, to this day, the check has never been cashed, returned or acknowledged as payment received. {See Affidavit Exhibit "D"}

22. For a contract to exist between two parties there must be full disclosure and consideration. To bring a claim one of the parties must be damaged. At the basic core and cause of Plaintiff's filed Complaint are primary issues of fact:

a) "Fraud in the inducement" due to non disclosure and

b) Defendants lacked standing to perform a sale under power.

c) Furthermore, conspiracy to commit theft by deception resulting from an absence of standing as Defendants have not proven that they had/have an interest or standing in this matter.

d) Wrongful Foreclosure

e) Under UCC §3-309 states that a person can enforce a promissory note without having the original, BUT only under certain limited circumstances, and the facts surrounding such MUST be proven:

> A person not in possession of an instrument is entitled to enforce the instrument if:
>
> (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred,
>
> (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and
>
> (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

23. A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument.

## STANDING

24. Plaintiff reiterates, realleges, and incorporates paragraphs one (1) through twenty (20), all general, and all unnumbered paragraphs, as if fully restated herein.

25. At closing, Plaintiff only had knowledge that American Mortgage Network, A Delaware Corporation, was the lender. The lender never disclosed that MERS was involved in any way significant to the mortgage. Plaintiff was hurried through the closing documents, and does not remember ever reviewing or signing any documents that mentioned MERS or that he was signing over his right for MERS or the lender to act as attorney in fact.

26. To the best of Plaintiff's belief, at some time unknown to Plaintiff, the Note and security deed were bifurcated by Countrywide where the deed alone was separated from the note and was assigned, for servicing purposes, to MERS, CWALT, INC., or Bank of New York Mellon, and possibly other unknown entities.

27. At the time of foreclosure, it was/still is, unknown who held and owned the actual "wet ink" original promissory Note. Based upon knowledge and belief, the promissory note had been pledged, hypothecated, and/or assigned as collateral security to an unknown entity, foreign trust, or to an agency of the United States government or Federal Reserve.

## FIRST CAUSE OF ACTION:

## FRAUD

28. Plaintiff reiterates, realleges, and incorporates paragraphs one (1) through twenty-seven (50), all general paragraphs, and all unnumbered paragraphs, as if fully restated herein

29. Regarding the matter of Fraud, it is apparent that the jostling of accounting maneuvers created by the availability of the Plaintiff's signature accelerated Fraud. Fraud commenced when full disclosure did not occur and no consideration was provided from the lender in the form of a loan of money.

30. Rubin Lublin, LLC who had provided Plaintiff with written Notice that their "client" for purposes of the loan and foreclosure sale was Bank of America, N.A., the same law firm which also fraudulently and affirmatively represented that the entity that had full authority affirmatively, amend and modify all terms of the mortgage instrument for the purposes of the subject loan foreclosure sale.

**Fact:** Under review of a securitization audit, there are no ***secured creditors*** with standing to foreclose.

31. Bank of America, N.A., and Rubin Lublin, LLC perpetrated a fraud, pretended Bank of America fka Countrywide aka CWALT, INC. was the holder of the note, and who in fact pursued and performed the foreclosure and sale under power through a non-perfected Trust aka CWALT, INC Trust 2005-33CB, now in theory owned by hedge fund manager Bank of New York Mellon that has openly acknowledged The Settlement that requires Bank of America and/or Countrywide to pay a total of US$8,500,000,000.00 (US$8.5Billion) into the Trusts (the 'Settlement Payment'). {See Exhibit for Line Item 14}

32. The record demonstrates that neither Defendants Bank of America, N.A. or above referenced entities possess or have possession of the Note or wet copy of the Security Deed, which are legal prerequisites to institute and maintain a foreclosure. The Settlement of US$8.5Billin clearly represents a sum equivalent to all the Trusts that were defective or unenforceable, thereby rendering the sizeable judgment payable to all those vested, including "Other Persons" associated with the Trust.

33. As severance of the ownership and possession of the original Note and Security Deed had occurred while in Countrywide's possession and as the true owner and holder of both the original Note and Security Deed are unknown and as a result of multiple and/or missing assignments, resulting in an incomplete and improper chain of title, all defendants named above are legally precluded from foreclosing and/or selling the subject property.

34. It has become common practice for foreclosure mill attorneys, as well as the entities involved in the fraudulent Assignment documents, and Rights Waivers included with the closing documents, to have the Authority to sign as Officers of MERS and have gotten so used to doing so, that they have begun to manufacture and fabricate documents to give the appearance of propriety and to mislead the court into thinking that these attorneys, their "clients", their employers and associated entities were all acting in good faith. These fraudulent attempts to lull the court into thinking that the actions taken were done with all the rights and authority required by Georgia law, fail upon their face, just like the purported Assignments.

35. All Defendants make much ado of having complied with the non-judicial foreclosure process in Georgia, all while completely ignoring the fact that their client did not then, and never has had any standing to foreclose by virtue of having no legally cognizable claim to the subject property.

36. Defendant Bank of America, N.A. and Bank of New York Mellon as Trustee for CWALT, INC. 2005-33CB claimed that it was entitled to foreclose by virtue of being a servicer, creditor, and or trustee; although, according to the assignment from MERS to Countrywide, CWALT, INC., Bank of America, or Bank of New York Mellon, they are ***assignees***, and the fact that Blackstone Group, LP aka Invitation Homes aka Riverstone Residential buys many of the subject properties that they foreclosure on, they are also ***purchasers***. In other words, MERS, Bank of America, N.A., CWALT, INC. aka Countrywide aka American Mortgage Network, A Delaware Corporation and all other entities known and unknown may be the ***assignee, servicer,*** and or ***purchaser***; which according to the Georgia Legislature, has specifically defined in to be read "***A creditor shall not include: (A) a servicer; (B) an assignee; (C) a purchaser; or (D) any state or local housing finance agency or any other state or local governmental or quasi-governmental entity.*" **Therefore, Bank of America, N.A. could not/cannot foreclose even, *assuming arguendo*, that the Assignment was valid.**

37. It is abundantly clear that the Legislature, in specifying that the "***secured creditor***" be upon the record prior to the sale meant for the creditor to be vested with title to any property it proposes to foreclose upon ***prior*** to the sale. Defendants have been known to argue that they have satisfied the requirements by causing the alleged Assignment to be recorded. Plaintiff specifically avers that a fraudulently created Assignment confers no rights at all, let alone the right to foreclose.

38. Plaintiff had been seeking a modification since his Chapter 7 Bankruptcy Discharge in 2009, and received negligible loan modification and servicing methods from Bank of America between 2009 and 2013, and was led to believe that even though the loan was in an active review that "Bank of America, N.A." would not foreclose, leading up to Bank of America to postpone a July 2, 2013 foreclosure sale date with Bank of America misinforming Plaintiff of such postponement, causing Plaintiff to file Chapter 13 on July 2, 2013. This and other actions brought about tremendous stress and anxiety for Plaintiff, contributing to total lack of trust for Bank of America, precipitating the foreclosure sale date of January 7, 2014 with actions of all parties concerned well documented to outline the evidence for this case. One would wonder how MERS, Bank of America, N.A., Bank of New York Mellon, Rubin Lublin, LLC, Invitation Homes aka Blackstone Group, LP, aka Riverstone Residential, and O'Kelly & Sorohan could blatantly violate the law. {See Affidavit Exhibits "G" & "H"}

### ***A. Fraud by Silence/Fraudulent Concealment***

39. The Supreme Court of Georgia has long held that "the mere silence of the party committing fraud", "is treated as a continuation of the original fraud.... Constituting a fraudulent concealment" see ***American Nat. Bank v. Fidelity & Deposit Co.*** 131 Ga. 854 (68 SE 622) (1908). ("Whose the basis of an action is actual fraud, the mere silence of the party committing it is treated as a continuation of the original fraud and as constituting a fraudulent concealment")

40. "As a general rule, a plaintiff relying on the doctrine of fraudulent concealment must show affirmative actions by the Defendant constituting concealment. [He] must also show that [he] exercised reasonable diligence to discover [his] cause of action within the limitations period." ***Hill v. Texaco, Inc.***, 825 F.2d 333, 335 (11th Cir. 1987) (citations omitted). Fraudulent concealment is described by ***Black's Law Dictionary*** as:

> **Fraudulent concealment.** The affirmative suppression or hiding, with the intent to deceive or defraud, of a material fact or circumstance that one is legally (or sometimes morally) bound to reveal.

41. There exists no contract between the Plaintiff and the Defendant. Therefore the record that the Defendants are basing their defense upon is a ***nul tiel*** record and the basis of the lenders defense claim of rights is ***crimen falsi*** from the beginning.

42. Since Fraud vitiates all contracts and there is no time limit of right to rescind on Fraud, Defendants are liable. All other issues in this case proceed from the two primary issues.

43. From these developed; Conversion, Civil RICO, and Illegal Accounting/investment practices ascertained through Securitization and Bundling of loans well utilized by some lending institutions, banks and mortgage companies. Maybe these are the reasons for the creation of MERS - to blur the vision of the righteous laws set up to protect the citizenry of the United States of America.

44. Defendant Bank of America, N.A. did not honor Plaintiff's right to equity in redemption.

45. Further, Defendant Bank of America, N.A. showed bad faith due to not providing the single necessary element requested to indicate such actions as valid until after foreclosing, and even then, the document is a fraud.

46. Plaintiff suffered irreparable injury and requests compensatory damages due to fraudulent procurement of his note Plaintiff suffered irreparable injury and

requests compensatory damages due to Unauthorized Use of his Signature and Name.

47. Plaintiff is entitled to punitive damages and attorney's fee as a result of Defendant' wrongful and fraudulent actions against him.

48. By reason of the foregoing and as a direct, proximate, and foreseeable result of Defendants' wrongful and fraudulent actions, Plaintiff has suffered loss and damages, for which Plaintiff seeks the maximum amount allowed by law, plus additional consideration given the hostile legal environment concocted by corporate lobbyists and their private interests.

**SECOND CAUSE OF ACTION:**

**WRONGFUL FORECLOSURE**

49. Plaintiff reiterates, realleges, and incorporates paragraphs one (1) through seventy-seven (71), all general paragraphs, and all unnumbered paragraphs, as if fully restated herein.

50. Where a creditor does not comply with the statutory duty to exercise fairly the power of sale in a deed to secure debt, the debtor may pursue a cause of action for wrongful foreclosure under.. Where a foreclosing creditor fails to comply with the notice requirements of section the residential debtor may pursue a claim for wrongful foreclosure. ***Roylston v. Bank of America, N.A.***, 290 Ga. App. 556, 660 S.E.2d 412, Ga. App. 2008.

51. The fact that the foreclosing party did not have a legal interest in the property and thus did not have a valid power to sell the property is a cognizable defense for a wrongful foreclosure claim. ***Id.*** "A claim for wrongful exercise of power of sale under can arise when the creditor has no legal right to foreclose." Id. (reversing trial court ruling that creditor's lack of a legal interest in the foreclosed property barred a wrongful foreclosure claim); see also ***Rapps v. PHH US Mtg. corp***, (allowing appellant to maintain wrongful foreclosure claim based on allegations that

appellee altered deed so that it could foreclose on property that was never subject to the deed). Where a grantee creditor does not comply with the statutory duty to exercise fairly the power of sale in a deed to secure debt, the debtor may either seek to set aside the foreclosure or sue for damages for the tort of wrongful foreclosure. ***Calhoun First Nat. Bank v. Dickens***, 264 Ga. 285, 286, 443 S.E.2d 837, 838 (Ga. 1994) (citing ***Clark v. West***, 196 Ga. App. 456, 457, 395 S.E.2d 884 (1990); ***Curl v. First Federal***, 243 Ga. 842, 843, 257 S.E.2d 264 (1979)). If the debtor elects to set aside the foreclosure sale, the debtor cannot also recover damages for the value of the property; the debtor may seek both cancellation of the foreclosure sale and recovery of damages "not associated with the value of the property for other wrongful conduct by a mortgagor." ***Calhoun***, 443 S.E.2d at 838; ***Clark***, 395 S.E.2d at 885-86 (explaining that damages "for other breaches of duty and other losses" are allowed in action to cancel foreclosure sale).

52. Due to multiple violations of Georgia foreclosure statutes, Defendants did not have the right to foreclose, thereby foreclosed wrongfully. There have been numerous problems with Notary Publics robo-signing attestation clauses, the documents signed without the Notary present; Notary Publics robo-signing attestation clauses prior to obtaining a lawful commission. Other Defendents of note: Rubin Lublin acting on behalf of Bank of America, Bank of New York Mellon, and O'Kelley and Sorohan acting on behalf of IH3 Properties Georgia aka Invitation Homes aka Blackstone Group, LP aka Riverstone Residential Group.

53. A security deed vests legal title to the property in the grantee, who may foreclose on the security interest. ***Tomkus v. Parker***, 224 S.E.2d 353, 369 (Ga. Ct. App. 1978). A "power of sale" in a security deed grants the original grantee the power to sell the property at a foreclosure sale as attorney-in-fact for the debtor to satisfy the debtor's delinquency. An assignee of the original grantee of a security deed may exercise the power of sale contained in such security deed. ***Allen v. Wade***, 203 Ga. 753, 755, 48 S.E.2d 538 (1948); ***Williams v. Joel,*** 89 Ga. App. 329, 79 S.E.2d 401 (1953). An assignee of a security deed, however, cannot exercise the power of sale and

foreclose upon the security until there has been an actual assignment complying with Georgia law. ***In re Cummings,*** 173 B.R. 959, 962 (N.D. Ga. 1994).

54. Under Georgia law, "the registry of a deed not attested, proved, or acknowledged according to law, is not constructive notice to a bona fide purchaser." ***Hopkins v. Va. Highlands & Assoc., LP***, 541 S.E.2d 386, 390 (Ga. Ct. App. 2000) (quoting ***Connif v. Hunnicutt***, 157 Ga. 823, 836, 122 S.E. 694 (Ga. 1924)).

55. As between the parties to the instrument, however, the deed is valid and binding absent a showing of fraud. ***Duncan v. Ball*** 172 Ga .App. 750, 752, 324 S.E.2d 477, 480 (Ga. Ct. App. 1984). In ***Leeds Bldg. Products, Inc. v. Sears Mtg. Corp***, the Georgia Supreme Court held that a deed that facially complies with statutory requirements provides constructive notice, but reaffirmed the general rule that a patently defective deed—a deed with a facial defect—does not constitute constructive notice to subsequent purchasers. 267 Ga. 300, 301-02, 477 S.E.2d 565 (Ga. 1996); see also ***In re Yearwood,*** 318 B.R. 227, 229 (Bankr.M.D.Ga.2004) (holding that where there is a patent defect in the security deed, there is no constructive notice like that of a latent defect); ***In re Blackmon***, 283 B.R. 910, 912 (Bankr.E.D.Tenn.2002) (interpreting Georgia law to mean that a recorded instrument that is facially invalid does not constitute constructive notice to subsequent purchasers). A patent defect is a defect that "is obvious and easily detectable," such as the absence of an unofficial witness's signature on the face of the instrument. ***In re Codrington***, 430 B.R. 287, 292 (N.D. Ga. 2009).

56. By way of example, in ***In re Yearwood***, the debtor executed a security deed to her residence in favor of the defendant. 318 B.R. 227, 228 (N.D. Ga. 2004). The security deed was notarized by an official witness, but did not bear the signature of an unofficial witness. Id. The court found that the Chapter 7 Trustee could avoid the defendant's interest in the property because the lack of unofficial witness's signature was a patent defect in the security deed, and thus there was no constructive notice to third parties of its invalidity.

57. In another case, the Supreme Court of Georgia found that where a warranty deed showed on its face that it was for consideration in excess of $100 but that no transfer tax had been paid to entitle the deed to be recorded, the deed had a patent defect, was not entitled to be recorded, and could not serve as constructive notice to a subsequent purchaser. ***Higdon v. Gates***, 231 S.E.2d 345, 346-47 (Ga. 1976). Finding that patent defect did not afford constructive notice, the court affirmed the cancellation of the deed as a cloud upon the superior title of a subsequent purchaser. ***Id.***

58. The assignment of the security deed must comply with the attestation requirements of deeds, and thus the signature of an official witness was required to create a valid assignment of the security interest. Just as a deed missing the signature of an unofficial witness is patently defective, an assignment missing the signature of an official witness is likewise patently defective.

59. A foreclosure of the security in the absence of a valid assignment is null and void. ***In re Cummings***, 173 B.R. 959, 962 (N.D. Ga. 1994). in Cummings, the foreclosing creditor claimed that it was entitled to foreclose on the property because it had acquired a security interest prior to the foreclosure sale by assignment from the original grantee of the security deed. ***In re Cummings***, 173 B.R. 959, 962 (N.D. Ga. 1994). There were two documents, the first, a hand-written assignment, which stated grantee "agrees to assign its interest" in the subject property to the foreclosing creditor, but did not contain language of conveyance. The evidence demonstrated that the assignment was not executed with the same formalities as the original deed containing the power of sale. Id. In addition, a second document entitled "Transfer and Assignment" from the original grantee to the foreclosing party was executed by the appropriate officers of the parties to the assignment with the same formalities of as the security deed, but the parties failed to proffer evidence concerning when the documents were executed and delivered with respect to the foreclosure date. Id. In the

absence of evidence of execution and delivery, the court concluded that note and the security deed not actually assigned to the foreclosing party before the date of the foreclosure sale. Id. at 963. Since there was no proof of a valid assignment of the note and security deed, the foreclosure of the property was declared null and void. Id.

60. The purported assignments do not comply with Georgia Law, because the assignment of the security deed did not satisfy the attestation formalities prescribed by O.C.G.A § 44-14-33 and a proported assignment is not a valid assignment under Georgia law. Thus, any foreclosure of the security interest covered by the assignment is null and void.

61. Any foreclosure of the security in the absence of a valid assignment is null and void ***ab initio***. ***In re Cummings***, 173 B.R. 959, 962 (N.D. Ga. 1994). Any foreclosure conducted using fraudulently signed and attested documents, which the Defendants knew or should have known to be fraudulently executed, including deeds, transfers, assignments or any other document, that are missing the signature of an unofficial witness and deeds missing the signature of an official witness (emphasis added) are defective. Therefore, any wrongful foreclosures are void under The Defendants' fraudulent assignments creates both patently and latently defective deeds, which slanders the title of any property foreclosed upon that relied upon an assignment with the fraudulent attestation causing Plaintiff damages.

62. An action for damages for emotional distress in a wrongful foreclosure action is treated as an action for intentional infliction of emotional distress, and the plaintiff has the burden to prove intentional conduct to cause harm. ***Mc Carter v. Banker Trust Co***., 543 S.E.2d 755, 758 (Ga. Ct. App. 2000).

63. Breach of the statutory duty upon mortgagee to exercise fairly and in good faith the power of sale in a deed to secure debt is a tort compensable at law, and entitles the debtor to punitive damages where appropriate. ***Clark v. West***, 196 Ga. App. 456, 457, 395 S.E.2d 884, 886 (Ga. Ct. App. 1990); see, e.g., ***Curl v. First Federal Savings & Loan Assn***., 243 Ga. 842, 843-844(2), 257 S.E.2d 264 (1979) (affirming

award of actual and punitive damages in an action for wrongful foreclosure); ***Decatur Investments Co. v. McWilliams***, 162 Ga. App. 181, 181, 290 S.E.2d 526, 527 (1982) (affirming award of punitive damages in a wrongful foreclosure action where debtor provided sufficient evidence of creditor's bad faith).

64. Because an improperly attested deed does not provide constructive notice of the assignee's security interest, the bona fide purchaser has priority of title to the disputed property as against the assignee, and thus, the assignee's deed should be canceled as a cloud upon the superior title of the purchaser. See ***Higdon v. Gates***, 238 Ga. 105, 231 S.E.2d 345 (Ga. 1976) (affirming trial court's cancellation of bank's security deed as a cloud upon title of subsequent purchaser where the deed was not properly attested because it showed on its face that the tax had not been paid to entitle it to be recorded).

65. As a result of Defendant's illegal and tortuous conduct in conducting wrongful foreclosures, Plaintiff requests, actual, compensatory, intentional infliction of emotional distress and punitive damages. ***Clark v. West***, 196 Ga. App. 456, 457, 395 S.E.2d 884, 886 (Ga. Ct. App. 1990); see, e.g., ***Curl v. First Federal Savings & Loan Assn.***, 243 Ga. 842, 843-844(2), 257 S.E.2d 264 (1979) (affirming award of actual and punitive damages in an action for wrongful foreclosure); ***Decatur Investments Co. v. McWilliams,*** 162 Ga. App. 181, 181, 290 S.E.2d 526, 527 (1982) (affirming award of punitive damages in a wrongful foreclosure action where debtor provided sufficient evidence of creditor's bad faith).

66. In a wrongful foreclosure action, the injured party may seek damages for mental anguish in addition to the cancellation of the foreclosure. ***DeGolyer v. Green Tree Servicing, LLC,*** 291 Ga. App. 444, 662 S.E.2d 141,147 9 Ga. Ct. App. (2008). "As a general precept, damages for mental distress are not recoverable in the absence of physical injury where the claim is premised upon ordinary negligence. However, when the claim is for intentional misconduct, damages for mental distress may be recovered without proof of physical injury." **Clark**, 196 Ga. App at 457-58; 395

S.E.2d at 886 (quoting ***Hamilton v. Powell, Goldstein, Frazer & Murphy***, 252 Ga. 149, 150, 311 S.E.2d 818 (Ga. 1984)).

67. Defendants' frauds and other misconduct upon the public and the judiciary for their financial benefit is reprehensible, unconscionable, outrageous and demands serious punitive damages to deter Defendants from further harming the public and deceiving the judiciary.

68. Plaintiff is entitled to punitive damages and attorney's fee as a result of Defendants' wrongful and fraudulent actions against him.

69. By reason of the foregoing and as a direct, proximate, and foreseeable result of Defendants' wrongful and fraudulent actions, Plaintiff suffered loss and damages in the amount well beyond present-day appropriations. A Special Council of known advocates led by William K. Black, Elizabeth Warren, Neil Barofsky, Brooksley Born, and Americans for Accountable & Responsible Banking shall pave the way for honest discussions and solutions to ensure Safe Banking.

## THIRD CAUSE OF ACTION
## CIVIL CONSPIRACY

70. Plaintiff reiterates, realleges, and incorporates paragraphs one (1) through One hundred-eight (86), all general paragraphs, and all unnumbered paragraphs, as if fully restated herein.

71. Defendant MERS and its parent company, MERSCORP at the direction of the "founding shareholders" which include CitiMortgage, Bank of America, Wells Fargo, Fannie Mae, Freddie Mac, and other parties, colluded to create a fictitious corporation, designed and designated a "bankruptcy remote" vehicle, acting at all times as a strawman, and designed specifically to avoid paying county clerk filing fees which are routinely required when recording any type of transfers of security deeds.

72. In 1996, mortgage lenders created Mortgage Electronic Registration Systems, Inc in order to internally track secondary market sales of promissory notes and home loan servicing rights by and between its members.

73. When a mortgage is registered under the MERS system, MERS holds bare legal title acting "solely as nominee" for their members, which may be banks, mortgage lenders, title companies, or even Government Sponsored Entities.

74. MERS maintains an electronic registry that purports to track the various sales and assignments of notes when they are sold from the original lenders to third parties.

75. MERS' theory is that as long as the subsequent sale of the servicing rights or the promissory note is sold to another "insider" member, MERS can remain the "nominee" for security deeds and the "beneficiary" for deeds of trust on behalf of the new owner.

76. To the courts, county clerks and general public, it appears as if one person continues to hold the deed and thus no recordation fees are incurred by MERS members even though the sale of promissory notes and servicing rights occur multiple times within a single mortgage transaction over the life of the loan.

77. The role of MERS is not properly disclosed to borrowers in their loan documents. MERS provides that it is a "nominee", but the term "nominee" is never defined in the security deed and no disclosures regarding MERS role in the transaction were provided to homeowners prior to executing the security deed.

78. Upon arrival at the closing, homeowners are given an untenable "take it or leave it" choice in regards to MERS. They may ONLY accept giving legal title to MERS if they wish to close the transaction for a home for themselves and their families.

79. MERS lacks the capacity to act as a Trust or Corporate Fiduciary in the State of Georgia, thereby rendering void the named MERS, acting solely as "nominee" for the Lender and the Lender's successors and assigns.

80. The term "nominee" is not defined in the security deed. Georgia law does not recognize the term "nominee" in a real estate transaction wherein the grantee holds legal title for the benefit of another. Black's Law Dictionary defines "nominee":

> "[a] person designated to act in place of another, usually in a very limited way" and as "[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others."***Black's Law Dictionary*** 1076 (8111 ed. 2004).
>
> A "beneficiary" is defined as "one designated to benefit from an appointment, disposition, or assignment or to receive something As a result of a legal arrangement or instrument." ***Black's Law Dictionary*** 165 (8111 ed. 2004).

81. According to MERS own admission in a Nebraska Court: "[MERS] does not acquire mortgage loans and is therefore not a mortgage banker under §45-702(6) because it only holds legal title to members' mortgages in a nominee capacity and is contractually prohibited from exercising any rights with respect to the mortgages without the authorization of the members. Further, MERS argues that it does not own the promissory notes secured by the mortgages and has no right to payments made on the notes. MERS explains that it merely "immobilizes the mortgage lien while transfers of the promissory notes and servicing rights continue to occur". (See ***Mortgage Elec. Reg. Sys., Inc. v. Nebraska Department of Banking,*** 270 Neb. 529, 704 N.W. 2d 74 (2005) (brief for MERS). The Nebraska court found that MERS was not a mortgage banker and held that MERS is a legal title holder in nominee capacity that permits lenders to sell and assign their interests in notes and servicing rights to third party investors without recording each transaction.

82. Payment of county clerk fees are deliberately avoided for each MERS transaction, which as a consequence, destroys the traditional notice given through recordation to third parties and destroying any chain of title relating to such transaction, except as such transfers or assignments are saved and held in the MERS

electronic database and therefore available ONLY to "insider" members but not to the Courts or the general public. In exchange for its services, MERS is paid through membership fees charged to its members The creation of MERS had the foreseeable effect of avoiding transfer fees associated with the traditional recording of assignments and transfers in the county clerk's deed books and evading disclosure of the time, nature and circumstances of assignments and transfers as well as the identity of the true owner of the mortgage and promissory note.

83. Defendant MERS, as nominee and/or assignee, was not the ***secured creditor*** of the Plaintiff's security interest because the improperly attested assignment conveyed no legal interest in the subject property. Even if the assignee became the holder in due course of the note, in the absence of a security interest in the property, the assignee does not become the ***"secured" creditor***, and any notice received by the residential debtor from the alleged assignee is insufficient to comply with the strict notice requirements of §44-14-162.1.

84. As a direct, proximate, and foreseeable result of Defendants' actions, Plaintiff was wrongfully subjected to the threat of Sale Under Power, suffered loss and damages in an amount to be decided by the Jury, and as a result of Defendants' wrongful and fraudulent actions, he further seeks the amount of $2,000,000.00

## FOURTH CAUSE OF ACTION

## THEFT BY DECEPTION and *CREMIN FALSI*

85. Plaintiff restates and realleges the contents of paragraphs one (1) through One hundred eleven (111), all general paragraphs, and all unnumbered paragraphs of this Complaint, as if fully restated herein.

86. "Theft by deception is committed when a person "obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property.". "A person deceives if he intentionally: (1) Creates or confirms another's impression of an existing fact or past event which is false and which the accused

knows or believes to be false; [or] (2) Fails to correct a false impression of an existing fact or past event which he has previously created or confirmed."[1]

87. Defendant MERS individually and collectively, at all times knew or should have known that Plaintiff's Note and Security Deed were not transferred or assigned at the time of initiation of the unlawful, non-judicial Sale Under Power.

88. Plaintiff received from the attorneys for the Defendants, the same attorneys that performed the unlawful, non-judicial Sale Under Power, a collection notice stating they were representing Defendant Bank of America, N.A. as the Creditor of the loan. Plaintiff believes Defendant Bank of America, N.A., and Assignee MERS were only "Nominees" under a Security Deed, were the only true lenders.

89. Defendant Bank of America, N.A., and Assignee MERS have thereby Fraudulently Misrepresented themselves as Creditors for undeserved gain.

90. Defendants Bank of America, N.A., and MERS, misrepresented ownership of the subject property by Assignment of an unenforceable instrument. A recent court case, ***US Bank N.A v. Wyman***, No. 466-6-09 Rdcv (Cohen, J., Oct. 20, 2009), expressed:

> "This view comports with the Black's Law definition of "nominee." MERS has authority to act "in a very limited way" - it "holds bare legal title for the benefit of other." ***Black's Law Dictionary*** pp.1076 (8th Ed.2004).
>
> "There is no evidence that MERS's authority extends to the transfer of the promissory note or that MERS acts as an agent for the lender. Rather than define MERS as an "agent," the Mortgage Deed specifically defines MERS as the unique legal term "nominee," thereby designating MERS to act "in a very limited way." See ***Id.*** Without any further evidence as to MERS's authority as a "nominee," this Court finds that MERS did not have the authority to transfer the promissory note."

---

91. Defendant Bank of America, N.A. has clearly misrepresented itself as having legal standing to bring any action against Plaintiff, or his property as there is no contract or enforceable instrument recorded showing that Defendant Bank of America and all its entities, has standing to assign Defendant MERS legal title, or that MERS had standing to assign the mortgage to Bank of New York Mellon. In ***Landmark National Bank v. Kesler***, 2009 Kan. LEXIS 834, the Kansas Supreme Court held that a nominee company called MERS has no right or standing to bring an action for foreclosure.

92. Either Defendants Bank of America aka Countrywide aka CWALT, INC., and/or MERS knowingly, willingly, wantonly, and fraudulently acted as Attorney-in-Fact and as transfer agent of an unenforceable instrument.

93. Defendant Bank of America, N.A., knowingly, willingly, and wantonly, did fraudulently convey a fraudulent Sale Under Power and Foreclosure Deed by the wrongful use of Plaintiff's Power of Attorney, thus acting for and on behalf of the Assignor and Assignee in both transactions, thereby unjustly enriching each Defendant.

94. It would be hard to believe that MERS had two Vice Presidents, sign a document at the same time, using only their initials, the Notary used only initials, and the only entity signing a name was the unofficial witness. A Jury would never fall for the ludicrous attempt to pass off the documents as lawful.

95. Defendant Bank of America, N.A., and Assignee MERS purported to hold legal title with respect to the rights conveyed by the borrower to the lender and they did not.

96. Defendants, individually and jointly, have deceitfully committed Fraud due to multiple incidents of misrepresenting Plaintiff, performing illegal transfers of unenforceable instruments, illegal conveyance of note and security deed, bad faith in

alleged Sale Under Power, illegal standing to foreclose, misrepresenting position in commerce, and filing erroneous unlawful documents in public records, defendants have acted in bad faith, not once, but many times to commit fraud for profit.

97. Defendants did not disclose to Plaintiff that they were using Plaintiff's name, note and credit to secure monies from investors.

98. Defendants did not disclose to Plaintiff that they were using his name, note and credit to secure monies from the Federal Reserve Bank.

99. Defendants did not disclose to Plaintiff that they got paid each and every time they transferred and assigned his note with his signature attached thereto.

100. Plaintiff did not have an understanding that his loan would be transferred or assigned to other parties without his consent or knowledge and without recourse; or that the other parties would charge him other fees and interest of which he had not agreed thereto.

101. Plaintiff suffered irreparable injury and requests compensatory damages due to fraudulent procurement of his note.

102. Plaintiff suffered irreparable injury and requests compensatory damages due to Unauthorized Use of his Signature and Name.

103. Plaintiff suffered irreparable injury and requests compensatory damages due to Unauthorized Use of his Signature and Name for the purpose of securing funds and funding.

104. That an actual case and controversy exists in that some or all of the Defendants, or their successors and assigns are attempting to deprive Plaintiff of his valuable right to own and use the subject real estate to which NICHOLAS BURROUGHS, had legal, rightful title and ownership.

105. Plaintiff's valuable right to own and use the subject real estate is under imminent infringement because the Defendant, or their successors and assigns, have illegally and wrongfully conducted a non-judicial foreclosure sale on January 7, 2014,

resulting in a Deed Under Power procured in an Allegheny Country foreclosure mill run by Bank of America commonly known for having over 60% of defects in transactions, whereby under the color of law and without lawful authority has fraudulently attempted to liquidate said property, contrary to the laws of the United States and the State of Georgia.

106. Plaintiff is entitled to punitive damages and attorney's fee as a result of Defendant wrongful and fraudulent actions against him.

107. Plaintiff is entitled to punitive damages and attorney's fee as a result of Defendant wrongful and fraudulent actions against him.

108. By reason of the foregoing and as a direct, proximate, and foreseeable result of Defendants' wrongful and fraudulent actions, Plaintiff has suffered loss and damages, for which Plaintiff seeks the amount equivalent to the fair market value of the 1531 Boulder Walk Drive SE, Atlanta, GA 30316 residence or up to and including US$1Million in damages for pain and suffering caused by Defendants' commonly practiced fraudulent activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1) Judgment in favor of the Plaintiff;

2) This Court sign an Order Setting Aside the unlawful and illegal Sale Deed Under Power;

3) This Court sign an order granting continuing temporary injunctive relief and//or a continuing Temporary Restraining Order against the defendants, some or all Defendants and/or their successors, nominees,

and/or assigns, and all others from further dispersing and damaging private property that legally should be titled to the Plaintiff;

4) That this Court DECLARE that Plaintiff is entitled to rescission of the entire mortgage and promissory note amounting to clear title to the property with fixtures as a result of the aforementioned averments;

5) As a result of some or all of the Defendant(s), and/or their successors, nominees, and/or assigns aforesaid violations, they are liable to Plaintiff in an amount not less than $500,000.00 and up to $2,000,000.00, for each and every violation, in an amount for the violations after proven;

6) Damages for the Unfair and Deceptive Acts and Practices in the amount of $400,000.00 for each and every violation, in an amount of $800,000.00, for the violations after proven;

6) The Court DECLARE that since this action was commenced, some or all of the Defendant(s), and/or their successors', nominees, and/or assigns' have violated, and continue to violate the Consumer Credit Protection Act, 1 5 U.S .C. §l601 et seq., and Regulation Z, 12 C .F.R. §226 .4 and 5, which was adopted pursuant to such Act, by failing to properly make the disclosures required by the Act and Regulation Z, and award damages as required by law;

7) The Court DECLARE Defendant(s), and/or their successors, nominees, and/or assigns have failed to credit and/or refund the Plaintiff deposit account as required by 12 C.F.R. § 226.21;

8) Judgment Declaring that Defendants' practices as described herein, violated the Fair Debt Collection Act.

10) Judgment giving Plaintiff Cost of litigation as provided in 15 U.S.C. §1601 et.seq. and Reasonable Attorney's fees, expert witness fees and other costs.

11) Defendant(s), and/or successors, nominees, and./or assigns be permanently enjoined from conducting a Sale Under Power of Plaintiff's real property, and deem that Plaintiff has full and complete title to said property.

12) Judgment Setting Aside any past or pending Sale Under Power of the deed and granting Clear Title and a Order requiring Defendant and their attorneys to Quiet the Title on Plaintiff's property located at 1531 Boulder Walk Drive SE Atlanta, Georgia 30316, and any extraordinary equitable and/or injunctive relief as permitted by law or equity;

13) Judgment of punitive damages and attorney's fee as a result of Defendants' actions against Plaintiff in the amount of $3,000,000.00 against all parties jointly and severally.

14) Trial by Jury as to the Damages in the amount of $14,000,000.00 against all parties jointly and severally;

15) Plaintiff recover such other and further relief as to this Honorable Court deems meet, just and proper pertaining to the extensive circumstances referenced in this case.

Respectfully submitted this 17th day April, 2014

By: [signature]

Nicholas Burroughs
1531 Boulder Walk Drive SE
Atlanta, Georgia 30316

# *EXHIBIT FOR LINE ITEM 11*

DEPARTMENT OF THE TREASURY
WASHINGTON, D.C.

.T SECRETARY

November 24, 1997

**MEMORANDUM FOR DEPUTY SECRETARY SUMMERS**

FROM: Timothy F. Geithner
Assistant Secretary (International Affairs)

SUBJECT: WTO Financial Services Negotiations: Industry Consultations

As we enter the end-game of WTO financial services negotiations, I believe it would be a good idea for you to touch base with the CEOs of the major U.S. banking and securities firms which have been closely following the WTO financial services negotiations. I suggest that you contact, via phone call, the following firms individually:

Banking
Bank of America: David Coulter, (415) 622-2255
Citibank: John Reed, (212) 559-2732
Chase Manhattan: Walter Shipley, (212) 270-1380

Securities
Goldman Sachs: Jon Corzine, (212) 902-8281
Merrill Lynch: David Kamanski, (212) 449-6868

These and other firms participate in the so called "Financial Leaders Group" (FLG), composed of key members of U.S. and European industry with a stake in the WTO talks. The FLG proposed a list of barriers to be addressed in the negotiations, and have sent representatives to several of the negotiating sessions in Geneva. I have contacted these firms' representatives at the working level — (e.g., Tom Dawson at Merrill) to advise them of your pending phone call.

Industry's assessment of the prospects for success in December can be characterized as cautiously optimistic. As formal offers from several of the target markets have not been submitted, the firms are reluctant to be pinned down on their views. However, I believe that the securities industry is broadly satisfied with the outlines of the deal and would be prepared to support a permanent U.S. MFN commitment; the banks are more reticent. In all cases, however, industry recognizes improvements over the previous WTO round, and no firm advocates a repeat of 1995.

Our team will be departing for the final Geneva negotiating session after Thanksgiving. I intend to join them -- and Jeff Lang -- for the conclusion of the talks on December 10-12.

- TAB A: Talking Points for Your Phone Call
- TAB B: Chart of U.S. Banks/Securities Firms' Foreign Presence

Google: Investigative Reporter Palast—Geithner/Summers "End Game Memo"

# *EXHIBIT FOR LINE ITEM 12 & 13*

# DGAP ›› Medientreff

DGAP-News: GCG, Inc. Provides Notice Regarding the Proposed Countrywide RMBS Settlement

Posted By feed_eqs On July 20, 2011 @ 3:00 pm In Wirtschaft | Comments Disabled

GCG, Inc.

20.07.2011 15:00

---

LAKE SUCCESS, N.Y., 2011-07-20 15:00 CEST (GLOBE NEWSWIRE) -- The following statement is being issued by GCG, Inc. regarding the proposed Countrywide RMBS Settlement.

NOTICE OF A SPECIAL PROCEEDING AND PROPOSED SETTLEMENT BETWEEN THE BANK OF NEW YORK MELLON, AS TRUSTEE OR INDENTURE TRUSTEE, AND BANK OF AMERICA CORPORATION, COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE FINANCIAL CORPORATION, AND BAC HOME LOANS SERVICING, LP

NOTICE IS HEREBY GIVEN TO THE HOLDERS OF CERTIFICATES OR NOTES ('CERTIFICATEHOLDERS') UNDER THE 530 COUNTRYWIDE MORTGAGE-SECURITIZATION TRUSTS LISTED IN EXHIBIT A ('TRUSTS') AND OTHER PERSONS POTENTIALLY INTERESTED IN THE TRUSTS. THIS NOTICE CONTAINS IMPORTANT INFORMATION FOR CERTIFICATEHOLDERS AND OTHER PERSONS POTENTIALLY INTERESTED IN THE TRUSTS.

IF APPLICABLE, ALL DEPOSITORIES, CUSTODIANS, AND OTHER INTERMEDIARIES RECEIVING THIS NOTICE ARE REQUESTED TO EXPEDITE RETRANSMITTAL TO CERTIFICATEHOLDERS IN A TIMELY MANNER.

This notice (the 'Notice') is given to you by The Bank of New York Mellon ('Trustee'), as trustee or indenture trustee under the Pooling and Servicing Agreements and Indentures and related Sales and Servicing Agreements (collectively, the 'Governing Agreements') governing the Trusts.

A settlement has been reached between the Trustee, on the one hand, and Countrywide Home Loans, Inc. ('CHL'), Countrywide Financial Corporation (together with CHL, 'Countrywide'), Bank of America Corporation ('BAC'), and BAC Home Loans Servicing, LP, formerly known as Countrywide Home Loans Servicing, LP ('BAC HLS,' and together with BAC, 'Bank of America'), on the other, concerning CHL's alleged breaches of representations and warranties in the Governing Agreements, and BAC HLS's alleged violations of prudent servicing obligations thereunder (the 'Settlement'). The Settlement requires Bank of America and/or Countrywide to pay a total of US$8,500,000,000.00 (US$8.5 billion) into the Trusts (the 'Settlement Payment'). It also requires BAC HLS to implement, among other things, a series of loan servicing procedures and improvements. The Trustee has filed a Verified Petition and commenced a special proceeding, In the matter of the application of The Bank of New York Mellon (Index No. 651786/2011), in the Supreme Court of the State of New York, County of New York (the 'Court') seeking a judgment, among other things, approving the Settlement and ordering that the Settlement is binding on all Certificateholders. The Settlement Agreement is attached to the Verified Petition as Exhibit B.

The Court has scheduled a hearing on the Verified Petition for November 17, 2011 at 2:15 p.m. at the Supreme Court of the State of New York, County of New York, 60 Centre Street, New York, New York 10007. The Court has the right to change the hearing date or time without further notice. At the hearing, the Court will determine, among other things, whether to approve the Settlement and make it binding on all Certificateholders, and will consider other important matters described in the Settlement Agreement. The Settlement, if approved by the Court, will affect the rights and interests of all Certificateholders, and

their successors-in-interests and assigns, in the Trusts, including by, among other things, releasing claims on behalf of the Trustee, the Trusts and all Certificateholders in the Trusts and their successors-in-interests and assigns arising out of or relating to (i) the origination, sale, or delivery of mortgages to the Trusts, including representations and warranties made with respect to those mortgages and any mortgage repurchase obligations, (ii) servicing of the mortgages in the Trusts, with certain exceptions, and (iii) documentation of the mortgages in the Trusts, with certain exceptions. (See the Settlement Agreement for a complete description of the releases provided for therein.)

Any Certificateholder or other person potentially interested in the Trusts may object to any aspect of the Settlement and request to be heard at the hearing by submitting a written notice prior to the hearing in the manner explained in the Court's Order dated June 29, 2011 (the 'Preliminary Order'). The Court has directed that any objections to the Settlement must be filed with the Court and served upon the Trustee's counsel by August 30, 2011, and that any (i) responses to objections, or (ii) submissions in favor of or with respect to the Settlement, must be filed and served by October 31, 2011. (Further information regarding the methodology for filing and serving papers is contained in the Preliminary Order and available as explained below.) If the Court approves the Settlement, all Certificateholders will be bound by the Settlement and the releases contained in the Settlement Agreement whether or not they appeared in the matter or submitted any objection to the Settlement. The Court has ordered that anyone who fails to object in the manner described in the Preliminary Order shall be deemed to have waived the right to object (including any right of appeal) and shall be forever barred from raising such objection before the Court or in any other action or proceeding, unless the Court orders otherwise. The Court has ordered that it retains jurisdiction over the Trustee, the Trusts and all Certificateholders (and their successors-in-interests, assigns or transferees, whether past, present or future) for all matters related to the Settlement and the special proceeding commenced by the Trustee seeking approval of the Settlement.

This Notice summarizes the special proceeding and the Settlement and is not a complete statement of the special proceeding or the Settlement. The Verified Petition, any papers filed in support of the Verified Petition, any orders entered by the Court in the special proceeding and other information relevant to the special proceeding are available at http://www.cwrmbssettlement.com, which will be updated when additional papers are filed or additional orders are entered in the special proceeding. You should also be able to obtain any documents filed with the Court by visiting the Court's website: http://iapps.courts.state.ny.us/iscroll/. If you have any questions, you may call (866) 294-7876 in the United States, +1 (614) 569-0289 outside the United States, or send an email to Questions@cwrmbssettlement.com.

Inquiries should NOT be directed to the Trustee, the Court, or the Clerk of the Court.

MISCELLANEOUS

Certificateholders and other persons potentially interested in the Trusts should not rely on the Trustee, or on counsel or other advisors retained by the Trustee, as their sole source of information. The Trustee neither makes any recommendation generally nor otherwise gives any investment advice herein.

EXHIBIT A

CWALT CWALT 2005-J6 CWHL CWHL 2007-HY3

CWALT 2004-10CB CWALT 2005-J7 CWHL 2004-10 CWHL 2007-HY4
CWALT 2004-12CB CWALT 2005-J8 CWHL 2004-11 CWHL 2007-HY5
CWALT 2004-13CB CWALT 2005-J9 CWHL 2004-12 CWHL 2007-HY6
CWALT 2004-14T2 CWALT 2006-11CB CWHL 2004-13 CWHL 2007-HY7
CWALT 2004-15 CWALT 2006-12CB CWHL 2004-14 CWHL 2007-HYB1
CWALT 2004-16CB CWALT 2006-13T1 CWHL 2004-15 CWHL 2007-HYB2

CWALT 2004-17CB CWALT 2006-14CB CWHL 2004-16 CWHL 2007-J1
CWALT 2004-18CB CWALT 2006-15CB CWHL 2004-18 CWHL 2007-J2
CWALT 2004-20T1 CWALT 2006-16CB CWHL 2004-19 CWHL 2007-J3
CWALT 2004-22CB CWALT 2006-17T1 CWHL 2004-2 CWHL 2008-1
CWALT 2004-24CB CWALT 2006-18CB CWHL 2004-20 CWL

-----

CWALT 2004-25CB CWALT 2006-19CB CWHL 2004-21 CWL 2004-1
CWALT 2004-26T1 CWALT 2006-20CB CWHL 2004-22 CWL 2004-10
CWALT 2004-27CB CWALT 2006-21CB CWHL 2004-23 CWL 2004-11
CWALT 2004-28CB CWALT 2006-23CB CWHL 2004-24 CWL 2004-12
CWALT 2004-29CB CWALT 2006-24CB CWHL 2004-25 CWL 2004-13
CWALT 2004-2CB CWALT 2006-25CB CWHL 2004-29 CWL 2004-14
CWALT 2004-30CB CWALT 2006-26CB CWHL 2004-3 CWL 2004-15
CWALT 2004-32CB CWALT 2006-27CB CWHL 2004-4 CWL 2004-2
CWALT 2004-33 CWALT 2006-28CB CWHL 2004-5 CWL 2004-3
CWALT 2004-34T1 CWALT 2006-29T1 CWHL 2004-6 CWL 2004-4
CWALT 2004-35T2 CWALT 2006-2CB CWHL 2004-7 CWL 2004-5
CWALT 2004-36CB CWALT 2006-30T1 CWHL 2004-8 CWL 2004-6
CWALT 2004-3T1 CWALT 2006-31CB CWHL 2004-9 CWL 2004-7
CWALT 2004-4CB CWALT 2006-32CB CWHL 2004-HYB1 CWL 2004-8
CWALT 2004-5CB CWALT 2006-33CB CWHL 2004-HYB2 CWL 2004-9
CWALT 2004-6CB CWALT 2006-34 CWHL 2004-HYB3 CWL 2004-AB1
CWALT 2004-7T1 CWALT 2006-35CB CWHL 2004-HYB4 CWL 2004-AB2
CWALT 2004-8CB CWALT 2006-36T2 CWHL 2004-HYB5 CWL 2004-BC2
CWALT 2004-9T1 CWALT 2006-39CB CWHL 2004-HYB6 CWL 2004-BC3
CWALT 2004-J10 CWALT 2006-40T1 CWHL 2004-HYB7 CWL 2004-BC4
CWALT 2004-J11 CWALT 2006-41CB CWHL 2004-HYB8 CWL 2004-BC5
CWALT 2004-J12 CWALT 2006-42 CWHL 2004-HYB9 CWL 2004-ECC1
CWALT 2004-J13 CWALT 2006-43CB CWHL 2004-J2 CWL 2004-ECC2
CWALT 2004-J2 CWALT 2006-45T1 CWHL 2004-J3 CWL 2004-S1
CWALT 2004-J3 CWALT 2006-46 CWHL 2004-J4 CWL 2004-SD2
CWALT 2004-J4 CWALT 2006-4CB CWHL 2004-J5 CWL 2004-SD3
CWALT 2004-J5 CWALT 2006-5T2 CWHL 2004-J6 CWL 2004-SD4
CWALT 2004-J6 CWALT 2006-6CB CWHL 2004-J7 CWL 2005-1
CWALT 2004-J7 CWALT 2006-7CB CWHL 2004-J8 CWL 2005-10
CWALT 2004-J8 CWALT 2006-8T1 CWHL 2004-J9 CWL 2005-11
CWALT 2004-J9 CWALT 2006-9T1 CWHL 2005-1 CWL 2005-12
CWALT 2005-10CB CWALT 2006-HY10 CWHL 2005-10 CWL 2005-13
CWALT 2005-11CB CWALT 2006-HY11 CWHL 2005-11 CWL 2005-14
CWALT 2005-13CB CWALT 2006-HY12 CWHL 2005-12 CWL 2005-15
CWALT 2005-14 CWALT 2006-HY13 CWHL 2005-13 CWL 2005-16
CWALT 2005-16 CWALT 2006-HY3 CWHL 2005-14 CWL 2005-17
CWALT 2005-17 CWALT 2006-J1 CWHL 2005-15 CWL 2005-2
CWALT 2005-18CB CWALT 2006-J2 CWHL 2005-16 CWL 2005-3
CWALT 2005-19CB CWALT 2006-J3 CWHL 2005-17 CWL 2005-4
CWALT 2005-1CB CWALT 2006-J4 CWHL 2005-18 CWL 2005-5
CWALT 2005-2 CWALT 2006-J5 CWHL 2005-2 CWL 2005-6
CWALT 2005-20CB CWALT 2006-J6 CWHL 2005-20 CWL 2005-7
CWALT 2005-21CB CWALT 2006-J7 CWHL 2005-21 CWL 2005-8
CWALT 2005-22T1 CWALT 2006-J8 CWHL 2005-22 CWL 2005-9
CWALT 2005-23CB CWALT 2006-OA1 CWHL 2005-23 CWL 2005-AB1
CWALT 2005-24 CWALT 2006-OA10 CWHL 2005-24 CWL 2005-AB2
CWALT 2005-25T1 CWALT 2006-OA11 CWHL 2005-25 CWL 2005-AB3
CWALT 2005-26CB CWALT 2006-OA12 CWHL 2005-26 CWL 2005-AB4
CWALT 2005-27 CWALT 2006-OA14 CWHL 2005-27 CWL 2005-AB5
CWALT 2005-28CB CWALT 2006-OA16 CWHL 2005-28 CWL 2005-BC1
CWALT 2005-29CB CWALT 2006-OA17 CWHL 2005-29 CWL 2005-BC2
CWALT 2005-30CB CWALT 2006-OA18 CWHL 2005-3 CWL 2005-BC3
CWALT 2005-31 CWALT 2006-OA19 CWHL 2005-30 CWL 2005-BC4
CWALT 2005-32T1 CWALT 2006-OA2 CWHL 2005-31 CWL 2005-BC5
CWALT 2005-33CB CWALT 2006-OA21 CWHL 2005-5 CWL 2005-HYB9
CWALT 2005-34CB CWALT 2006-OA22 CWHL 2005-6 CWL 2005-IM1
CWALT 2005-35CB CWALT 2006-OA3 CWHL 2005-7 CWL 2005-IM2
CWALT 2005-36 CWALT 2006-OA6 CWHL 2005-9 CWL 2005-IM3
CWALT 2005-37T1 CWALT 2006-OA7 CWHL 2005-HYB10 CWL 2005-SD1
CWALT 2005-38 CWALT 2006-OA8 CWHL 2005-HYB1 CWL 2005-SD2

CWALT 2005-3CB CWALT 2006-OA9 CWHL 2005-HYB2 CWL 2005-SD3
CWALT 2005-4 CWALT 2006-OC1 CWHL 2005-HYB3 CWL 2006-1
CWALT 2005-40CB CWALT 2006-OC10 CWHL 2005-HYB4 CWL 2006-10
CWALT 2005-41 CWALT 2006-OC11 CWHL 2005-HYB5 CWL 2006-11
CWALT 2005-42CB CWALT 2006-OC2 CWHL 2005-HYB6 CWL 2006-12
CWALT 2005-43 CWALT 2006-OC3 CWHL 2005-HYB7 CWL 2006-13
CWALT 2005-44 CWALT 2006-OC4 CWHL 2005-HYB8 CWL 2006-14
CWALT 2005-45 CWALT 2006-OC5 CWHL 2005-J1 CWL 2006-15
CWALT 2005-46CB CWALT 2006-OC6 CWHL 2005-J2 CWL 2006-16
CWALT 2005-47CB CWALT 2006-OC7 CWHL 2005-J3 CWL 2006-17
CWALT 2005-48T1 CWALT 2006-OC8 CWHL 2005-J4 CWL 2006-18
CWALT 2005-49CB CWALT 2006-OC9 CWHL 2006-1 CWL 2006-19
CWALT 2005-50CB CWALT 2007-10CB CWHL 2006-10 CWL 2006-2
CWALT 2005-51 CWALT 2007-11T1 CWHL 2006-11 CWL 2006-20
CWALT 2005-52CB CWALT 2007-12T1 CWHL 2006-12 CWL 2006-21
CWALT 2005-53T2 CWALT 2007-13 CWHL 2006-13 CWL 2006-22
CWALT 2005-54CB CWALT 2007-14T2 CWHL 2006-14 CWL 2006-23
CWALT 2005-55CB CWALT 2007-15CB CWHL 2006-15 CWL 2006-24
CWALT 2005-56 CWALT 2007-16CB CWHL 2006-16 CWL 2006-25
CWALT 2005-57CB CWALT 2007-17CB CWHL 2006-17 CWL 2006-26
CWALT 2005-58 CWALT 2007-18CB CWHL 2006-18 CWL 2006-3
CWALT 2005-59 CWALT 2007-19 CWHL 2006-19 CWL 2006-4
CWALT 2005-60T1 CWALT 2007-1T1 CWHL 2006-20 CWL 2006-5
CWALT 2005-61 CWALT 2007-20 CWHL 2006-21 CWL 2006-6
CWALT 2005-62 CWALT 2007-21CB CWHL 2006-3 CWL 2006-7
CWALT 2005-63 CWALT 2007-22 CWHL 2006-6 CWL 2006-8
CWALT 2005-64CB CWALT 2007-23CB CWHL 2006-8 CWL 2006-9
CWALT 2005-65CB CWALT 2007-24 CWHL 2006-9 CWL 2006-ABC1
CWALT 2005-66 CWALT 2007-25 CWHL 2006-HYB1 CWL 2006-BC1
CWALT 2005-67CB CWALT 2007-2CB CWHL 2006-HYB2 CWL 2006-BC2
CWALT 2005-69 CWALT 2007-3T1 CWHL 2006-HYB3 CWL 2006-BC3
CWALT 2005-6CB CWALT 2007-4CB CWHL 2006-HYB4 CWL 2006-BC4
CWALT 2005-70CB CWALT 2007-5CB CWHL 2006-HYB5 CWL 2006-BC5
CWALT 2005-71 CWALT 2007-6 CWHL 2006-J1 CWL 2006-IM1
CWALT 2005-72 CWALT 2007-7T2 CWHL 2006-J2 CWL 2006-QH1
CWALT 2005-73CB CWALT 2007-8CB CWHL 2006-J3 CWL 2006-SD1
CWALT 2005-74T1 CWALT 2007-9T1 CWHL 2006-J4 CWL 2006-SD2
CWALT 2005-75CB CWALT 2007-AL1 CWHL 2006-OA4 CWL 2006-SD3
CWALT 2005-76 CWALT 2007-HY2 CWHL 2006-OA5 CWL 2006-SD4
CWALT 2005-77T1 CWALT 2007-HY3 CWHL 2006-TM1 CWL 2006-SPS1
CWALT 2005-79CB CWALT 2007-HY4 CWHL 2007-1 CWL 2006-SPS2
CWALT 2005-7CB CWALT 2007-HY6 CWHL 2007-10 CWL 2007-1
CWALT 2005-80CB CWALT 2007-HY7C CWHL 2007-11 CWL 2007-10
CWALT 2005-81 CWALT 2007-HY8C CWHL 2007-12 CWL 2007-11
CWALT 2005-82 CWALT 2007-HY9 CWHL 2007-13 CWL 2007-12
CWALT 2005-83CB CWALT 2007-J1 CWHL 2007-14 CWL 2007-13
CWALT 2005-84 CWALT 2007-J2 CWHL 2007-15 CWL 2007-2
CWALT 2005-85CB CWALT 2007-OA10 CWHL 2007-16 CWL 2007-3
CWALT 2005-86CB CWALT 2007-OA11 CWHL 2007-17 CWL 2007-4
CWALT 2005-9CB CWALT 2007-OA2 CWHL 2007-18 CWL 2007-5
CWALT 2005-AR1 CWALT 2007-OA3 CWHL 2007-19 CWL 2007-6
CWALT 2005-IM1 CWALT 2007-OA4 CWHL 2007-2 CWL 2007-7
CWALT 2005-J1 CWALT 2007-OA6 CWHL 2007-20 CWL 2007-8
CWALT 2005-J10 CWALT 2007-OA7 CWHL 2007-21 CWL 2007-9
CWALT 2005-J11 CWALT 2007-OA8 CWHL 2007-3 CWL 2007-BC1
CWALT 2005-J12 CWALT 2007-OA9 CWHL 2007-4 CWL 2007-BC2
CWALT 2005-J13 CWALT 2007-OH1 CWHL 2007-5 CWL 2007-BC3
CWALT 2005-J14 CWALT 2007-OH2 CWHL 2007-6 CWL 2007-SD1
CWALT 2005-J2 CWALT 2007-OH3 CWHL 2007-7 CWL 2007-SEA1
CWALT 2005-J3 CWHEL CWHL 2007-8 CWL 2007-SEA2

------

CWALT 2005-J4 CWHEL 2006-A CWHL 2007-9
CWALT 2005-J5 CWHEL 2007-G CWHL 2007-HY1

CONTACT: Jeanne Finegan
GCG, Inc.

(503) 906-5301
News Source: NASDAQ OMX

20.07.2011 Dissemination of a Corporate News, transmitted by DGAP – a company of EquityStory AG.
The issuer is solely responsible for the content of this announcement.

DGAP's Distribution Services include Regulatory Announcements, Financial/Corporate News and Press Releases.
Media archive at www.dgap-medientreff.de and www.dgap.de

---

Language: English
Company: GCG, Inc.

United States
Phone:
Fax:
E-mail:
Internet:
ISIN: US9901530587
WKN:

End of Announcement DGAP News-Service

---

Article printed from DGAP-MedienTreff: **http://www.dgap-medientreff.de**

URL to article: **http://www.dgap-medientreff.de/news/wirtschaft/dgap-news-gcg-inc-provides-notice-regarding-the-proposed-countrywide-rmbs-settlement-195733/**